**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUDITH FITZGERALD,<br><br>     Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>     Defendant. | Case No.: 1:14-cv-00052 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF JUDITH FITZGERALD AND AGAINST DEFENDANT CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY |

Judith Fitzgerald ("Plaintiff") asserts she is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the medical record and relying upon the testimony of a vocational expert. For the reasons set forth below, the action is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. §495(g).

**I.     Procedural History**

Plaintiff filed applications for benefits on March 9, 2011, alleging disability beginning November 23, 2009. (Doc. 9-3 at 14.) The Social Security Administration denied her claims initially and upon reconsideration. (Doc. 9-5 at 5-10.) After requesting a hearing, Plaintiff testified before an ALJ on August 29, 2012. (Doc. 9-3 at 14, 28.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision denying benefits on November 20, 2013. (*Id*. at 2.) Therefore, the ALJ's

determination became the final decision of the Commissioner of Social Security ("Commissioner").

On January 14, 2014, Plaintiff initiated this action by filing a complaint for judicial review of the decision denying her applications for benefits pursuant to 42 U.S.C. § 405(g). (Doc. 1.) She filed her opening brief on September 2, 2014, asserting the ALJ's decision lacks the support of substantial evidence and should be remanded. (Doc. 10.) Defendant filed a brief in opposition on October 2, 2014 (Doc. 11), to which Plaintiff filed a reply on October 15, 2014. (Doc. 12).

## II.     Standard of Review

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## III.    Disability Benefits

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## IV.     Administrative Determination

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927.

### A.     Relevant Medical Opinions[1]

Dr. Ekram Michiel performed a psychiatric evaluation on May 29, 2011.  (Doc. 9-8 at 19.) Plaintiff told Dr. Michiel that she had "agoraphobia, panic, anxiety attacks, and depression." (*Id.*)  She reported that she "always felt depressed and anxious," but the feelings worsened to the point that she "had to stop working." (*Id.*)  She explained she had worked as a waitress, but was "very anxious around people," which caused her heart to race, "shortness of breath and tightness in her chest." (*Id.*) Further, Plaintiff said she was "unable to sleep at night unless she 'smokes a little weed.'" (*Id.*)  She was not taking any prescription medication for any impairments. (*Id.* at 20.)  Dr. Michiel observed that Plaintiff's "[t]hought process was goal-directed," and she "was orientated to person, place, and date." (*Id.* at 21.)  Dr. Michiel found Plaintiff's "attention and concentration was intact," but her short-term memory was poor, and her immediate recall was fair. (*Id.*)  "Based upon the evaluation and observation throughout the interview," Dr. Michiel opined:

---

[1] Plaintiff does not challenge the ALJ's evaluation of the medical evidence related to her physical impairments, but rather only the conclusions related to her mental impairments.  (*See generally* Doc. 10 at 12-18.)  Accordingly, below the Court summarizes only the evidence related to Plaintiff's mental abilities and limitations.

> [T]he claimant is able to maintain attention and concentration to carry out simple job instructions.
>
> The claimant is able to relate and interact with coworkers, supervisors and the general public.
>
> The claimant is unable to carry out an extensive variety of technical and/or complex instructions.
>
> There are no restrictions on activities of daily living.
>
> The claimant is unable to handle her own funds because of her abuse of marijuana.

(Doc. 9-8 at 21.) Dr. Michiel gave Plaintiff a Global Assessment of Functioning ("GAF") score of 55. (*Id.* at 20.)

Dr. Burnard Pearce completed a psychiatric review technique form and mental residual functional capacity assessment on June 20, 2011. (Doc. 9-8 at 24-40.) Dr. Pearce opined Plaintiff suffered from an affective disorder, disturbance of mood, and depression. (*Id.* at 24, 27.) He believed Plaintiff had mild restriction of activities of daily living; moderate difficulties of maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. (*Id.* at 34.) According to Dr. Pearce, Plaintiff was "not significantly limited" with her ability to understand, remember, and carry out very short and simple instructions, but was "moderately limited" with detailed instructions. (*Id.* at 38.) Plaintiff was "not significantly limited" with her ability to maintain attention and concentration for extended periods; to maintain a schedule, regular attendance, and ordinary routine; and to work in coordination or proximity to others without being distracted. (*Id.*) However, Dr. Pearce believed Plaintiff was "moderately limited" with her ability to interact appropriately with the general public. (*Id.* at 39.) He concluded Plaintiff was able to "perform simple and some complex tasks," "relate to others on a superficial work basis," and "adapt to a work situation." (*Id.* at 40.)

On October 22, 2011, Dr. Franco reviewed the medical record and "adopt[ed] the initial determination" from Dr. Pearce that Plaintiff "is capable of lp srts." (Doc. 9-8 at 64.) In other words, Dr. Franco believed Plaintiff was capable of performing tasks simple repetitive tasks, with limited public exposure. (*Id.*; *see also* Doc. 10 at 15; Doc. 11 at 7.)

A treating physician[2] from the Fresno County Department of Behavioral Health completed an

---

[2] The physician's signature is illegible. (*See* Doc. 9-3 at 22; Doc. 9-8 at 81.)

4

assessment related to Plaintiff's eligibility for General Relief on May 3, 2012. (Doc. 9-8 at 80 -81.) The physician noted that Plaintiff was "continuing to experience severe depression and anxiety," isolated herself at home, and had diminished concentration. (*Id.*) Accordingly, the treating physician opined Plaintiff was unable to work. (*Id.*)

### B. Administrative Hearing Testimony

Plaintiff testified that she was 62 years old and that she lived in a "small one-bedroom house." (Doc. 9-3 at 34.) She reported that she graduated from high school and attended a semester of college. (*Id.*) Plaintiff said she was a waitress for over twenty years, starting in the early 1980s and continuing through November of 2009. (*Id.* at 35.) She said she "never did anything else," and stopped working after she was diagnosed with depression and was put on disability. (*Id.*) Although Plaintiff's doctor told her she was "all better now," Plaintiff believed she was not able to work because she did not like leaving her house or "being around people." (*Id.* at 36.) Plaintiff explained she was "very nervous" and "very anxious" around people, and she simply did not "like being out in the world." (*Id.* at 37.)

Vocational expert Susan Creighton-Clavel testified after Plaintiff at the hearing. (Doc. 9-3 at 55.) The vocational expert ("VE") identified Plaintiff's past relevant work as a waitress, which required skills including "being able to communicate and interact with the public." (*Id.* at 57.) The ALJ asked the VE to consider a hypothetical individual the same age as Plaintiff, with a "high school education [and] past relevant work the same as the claimant." (Doc. 9-3 58.) The ALJ stated the individual was able to lift 10 pounds frequently and 20 pounds occasionally. (*Id.*) The VE opined such a person would be able to perform Plaintiff's past work. (*Id.*) Based upon Exhibit 7, the assessment of Dr. Pearce, the ALJ asked the VE to consider a person with the additional limitation of relating only "on a superficial work basis, that's small talk, not interacting on any deep level." (*Id.*) The VE opined a worker with that limitation would still be able to perform work as a waitress. (*Id.*)

Plaintiff's counsel asked the VE to consider an individual who was "limited to simple job instructions." (Doc. 9-3 at 61.) The VE explained such a person would not be able to perform Plaintiff's past relevant work because "simple job instructions [were] at the unskilled level, and a waitress is the low end of semiskilled." (*Id.*)

///

### C. The ALJ's Findings

Pursuant to the five-step process, the ALJ determined first that Plaintiff had not engaged in substantial activity after the alleged onset date of November 23, 2009. (Doc. 9-3 at 16.) Second, the ALJ found Plaintiff's severe impairments include Hepatitis B, obesity and depressive disorder. (*Id.*) Next, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a Listing. (*Id.* at 17.)

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416(b), because Plaintiff could "occasionally lift 20 pounds and frequently lift 10 pounds and can stand, sit and walk for 6-hours out of an 8-hour day." (Doc. 9-3 at 18.) Further, Plaintiff was limited to "superficial ('small talk') interaction with others." (*Id.*) With this RFC, the ALJ concluded Plaintiff was "capable of performing past relevant work as a waitress." (*Id.* at 22.) Thus, the ALJ concluded Plaintiff was not "under a disability, as defined in the Social Security Act, from November 23, 2009 through the date of th[e] decision." (*Id.* at 23.)

## V. Discussion and Analysis

Plaintiff asserts the ALJ erred in evaluating the medical evidence because "[t]he ALJ did not address Dr. Franco's case analysis in [the] decision," and in failing to adopt Dr. Michiel's opinion that Plaintiff was limited to simple repetitive tasks. (Doc. 10 at 15-16.) Further, Plaintiff asserts the ALJ erred in relying upon the testimony of the vocational expert to support the determination at step four that Plaintiff was able to perform her past relevant work. (*Id.* at 18-20.) On the other hand, Defendant argues "the ALJ's RFC assessment is supported by substantial evidence," and that the Court should affirm the ALJ's decision. (Doc. 11 at 7-11.)

### A. Evaluation of the Medical Opinions

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989). Also, an examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2). Thus, the courts apply a hierarchy to the opinions offered by physicians.

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject a contradicted opinion of a physician with "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). If there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

Here, ALJ gave "[g]reat weight" to the opinions of Drs. Michiel and Pearce. (Doc. 9-3 at 22.) The ALJ noted Dr. Michiel "opined that the claimant is able to maintain attention and concentration, relate and interact with co-workers, supervisors and the public and has no restrictions in activities of daily living." (*Id.* at 22.) However, the ALJ failed to acknowledge that Dr. Michiel, an examining physician, opined Plaintiff was "able to maintain attention and concentration *to carry out simple job instructions*" and was "unable to carry out an extensive variety of technical and/or complex instructions." (Doc. 9-8 at 21, emphasis added.) Similarly, Dr. Pearce believed that Plaintiff was "moderately limited" with her ability to understand, remember, and carry out detailed instructions, and opined Plaintiff was able to "perform simple and some complex tasks." (*Id.* at 38, 40.) Dr. Franco, who reviewed Plaintiff's treatment notes and medical record, and opined that Plaintiff was capable of simple, repetitive tasks with limited public interaction. (*See generally* Doc. 9-3 at 22l Doc. 9-8 at 64.) Thus, each physician that examined Plaintiff or reviewed her medical records believed that Plaintiff lacked the ability to concentrate on or perform all tasks.[3]

In the RFC, the ALJ limited Plaintiff to "superficial ('small talk') interaction with others, but did not limit Plaintiff to simple tasks or address Plaintiff's limitations with attention and concentration.

---

[3] Notably, Plaintiff's treating physician, whose opinion was rejected by the ALJ, also believed Plaintiff had "difficulty with concentration." (Doc. 9-3 at 22.)

7

(*See* Doc. 9-3 at 18.) Thus, the ALJ rejected the opinions of Drs. Michiel and Pearce regarding her limitations, yet failed to articulate any reasons for doing so. Moreover, the ALJ failed to acknowledge or discuss the opinion of Dr. Franco that Plaintiff should be restricted to simple, repetitive tasks. As a result, the AJ erred in her evaluation of the medical evidence, and the RFC lacks the support of substantial evidence in the record. *See Allen*, 749 F.2d at 579; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

## B.     Testimony of the Vocational Expert

The Commissioner may establish a claimant can work in the national economy through the testimony of a vocational expert, who may "testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001); *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The ALJ may pose "hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration" when eliciting testimony. *Tackett*, 180 F.3d at 1101 (quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). The description of impairments "must be accurate, detailed, and supported by the medical record." *Id.* "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). When the "weight of the medical evidence supports the hypothetical questions posed by the ALJ," the ALJ's findings will be upheld by the court. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *see also Gallant*, 753 F.2d at 1456.

Here, the ALJ relied upon the testimony of the vocational expert at step four of the sequential evaluation to determine that Plaintiff was able to perform her past relevant work. (*See* Doc. 9-3 at 22.) However, because the ALJ failed to articulate specific, legitimate reasons for rejecting the opinions of Drs. Michiel, Pearce, and Franco regarding Plaintiff's concentration and limitation to simple, repetitive tasks, the limitations should have been incorporated in the hypothetical question posed to the vocational expert. *See Robbins*, 466 F.3d at 886 (9th Cir. 2006). Therefore, the testimony of the vocational expert has no evidentiary value for the ALJ's conclusion that Plaintiff could perform her past relevant work as a waitress.

### C. Remand is appropriate in this matter

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the District Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed when no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to set forth legally sufficient reasons to reject the opinions of Drs. Michiel and Pearce regarding her limitations, and failed to discuss the opinion of Dr. Franco. Notably, the vocational expert testified that a person "limited to simple job instructions" would not be able to perform Plaintiff's past relevant work because "simple job instructions [were] at the unskilled level, and a waitress is the low end of semiskilled." (Doc. 9-3 at 61.) However, the vocational expert did not offer any testimony regarding whether an individual with the same background and limitations as Plaintiff is able to perform other work in the national economy. Thus, it is not clear from the record that Plaintiff is disabled as defined by the Social Security Act, and a remand for further proceedings is appropriate in this matter.

### VI.     Conclusion and Order

For the reasons set forth above, the Court finds the ALJ erred in evaluating the medical evidence and in relying upon the testimony of the vocational expert to find that Plaintiff is able to perform her past relevant work. Because the ALJ failed to apply the proper legal standards, the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

///

Accordingly, **IT IS HEREBY ORDERED**:

1. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Judith Fitzgerald and against Defendant Carolyn Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __**October 21, 2014**__        _____/s/ Jennifer L. Thurston_____
                                                                UNITED STATES MAGISTRATE JUDGE